# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re

STEPHEN PAGE TODD,

    Debtor.

_____

WILLIAM C. CARN, III (Trustee),

    Plaintiff,

v.

STEPHEN PAGE TODD, LEANNE TODD,
WILLIAM B. TODD, JAMES C. TODD, JR.,
PB & J, LLC, and TODD PROPERTIES, LLC,

    Defendants.

Case No. 14-11423-BPC

Chapter 7

Adv. Proc. 18-01167- BPC

## MEMORANDUM OPINION

William C. Carn, III (hereinafter "Plaintiff"), Trustee of Debtor's Chapter 7 estate, filed the above-referenced Adversary Proceeding on December 28, 2018, naming Stephen Page Todd, Leanne Todd, William B. Todd, James C. Todd, Jr., PB & J, LLC, and Todd Properties, LLC, as Defendants. The Complaint consists of two counts: (1) fraudulent transfer pursuant to 11 U.S.C. § 544 and (2) civil conspiracy. In response, Defendants filed a Motion to Dismiss. (Doc. 17). Defendants' motion argues that the Complaint should be dismissed with prejudice as time barred. Plaintiff filed a Response/Objection (Doc. 26) to the Motion to Dismiss. RREF II CB Acquisitions, LLC, a creditor, (hereinafter "RREF")

joined in Plaintiff's response. (Doc. 27). The Motion to Dismiss came on for hearing on April 29, 2019. Thereafter, the Court took the matter under advisement. For the reasons set forth below, the Court finds that Defendants' motion is due to be GRANTED.

## Jurisdiction

The matter at issue in this case concerns an alleged fraudulent transfer, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(H) thereby extending this Court's jurisdiction to the entry of a final order or judgment. Moreover, all parties expressly consented to the jurisdiction of the Bankruptcy Court. (Doc. 1); (Doc. 25).

## Undisputed Facts

Defendants' Motion to Dismiss questions the timeliness of Plaintiff's Complaint. A timeline is critical when analyzing statute of limitations arguments. The Court will not delve into the details of the alleged fraudulent transfer or the innerworkings of Debtor's underlying bankruptcy case.[1] Instead, the Court will focus on the relevant dates of record. Accordingly, the relevant, undisputed facts are as follows:

Debtor, Stephen Page Todd (hereinafter "Debtor") filed his Chapter 7 petition on July 25, 2014. (BK Doc. 1). Plaintiff was appointed as the Chapter 7 Trustee on July 26, 2014. (BK Doc. 5). On July 28, 2014, counsel for RREF filed a Notice of Appearance in the bankruptcy case. (BK Doc. 7).

---

[1] Hereinafter, the Court's citation to the docket sheets will be distinguished by "AP Doc. __" for the adversary proceeding docket and "BK Doc. __" for the underlying bankruptcy case.

Less than one month after filing the petition, Debtor amended his Statement of Financial Affairs on August 15, 2014. (BK Doc. 16). That amendment states as follows:

> DEBTOR TRANSFERRED HIS 33.33% INTEREST IN PB&J LLC TO HIS WIFE ON OR ABOUT 1/1/2013. THE 33.33% INTEREST HAD NO VALUE AT THE TIME OF THE TRANSFER.

(BK Doc. 16).

On April 5, 2018, Plaintiff moved to sell those assets set forth on Debtor's Schedule B (the "Schedule B Assets") and any avoidance actions under Chapter 5 of the Bankruptcy Code (the "Chapter 5 Claims"). [2] (BK Doc. 87). RREF objected to Plaintiff's motion to sell. (BK Doc. 93). On October 18, 2018, the Court signed off on a Consent Order submitted by Debtor, Plaintiff, and RREF. (BK Doc. 98). The Consent Order set forth bidding procedures for the assets and required that the parties later file a separate motion to approve the final sale with notice to all creditors and interested parties. (BK Doc. 98).

RREF and Defendant, Leanne Todd, participated in the auction that concluded with Leanne Todd as the highest bidder on the Schedule B Assets and RREF as the highest bidder on the Chapter 5 Claims. (BK Doc. 102). The Trustee's Report of Sale and Motion for Approval and Confirmation of Sale of Assets Free and Clear of Liens, Claims, or Encumbrances (hereinafter "Motion to Approve Sale") was filed on April 8, 2019 (BK Doc. 102) and is currently pending in the underlying bankruptcy case.

Plaintiff filed the instant adversary proceeding on December 28, 2018. (AP Doc. 1). Defendants filed the subject Motion to Dismiss on February 26, 2019. (AP Doc. 17).

---

[2] This was the third sale motion by Plaintiff. Prior motions were either withdrawn or denied for various reasons irrelevant to the issue before the Court.

## Legal Analysis

**COUNT I: 11 U.S.C. § 544--Fraudulent Transfer**

In Count I of the Complaint, Plaintiff alleges that the January 1, 2013 transfer by Debtor of his 33.33% interest in PB&J LLC to his wife, Leanne Todd, was a fraudulent transfer under the Alabama Uniform Fraudulent Transfer Act, Ala. Code §§ 8-9A-1 through 8-9A-12) (hereinafter "AUFTA"). In response, Defendants argue that Plaintiff's fraudulent transfer claim is time barred by 11 U.S.C. § 546(a). Section 546 of the Bankruptcy Code states:

> (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of--
>     (1) the later of--
>         (A) 2 years after the entry of the order for relief; or
>         (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
>     (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

Plaintiff's first counter-argument is that the adversary proceeding was filed under "applicable law," which in this case would be the AUFTA. Plaintiff cites § 544(b)(1), which provides:

> (b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544.

Under the AUFTA, claims based on fraudulent transfers of personal property must be brought within six years after the transfer of the personal property was made. Ala. Code § 8-9A-9(2).[3] Since the Alabama statute provides for a six-year statute of limitations, Plaintiff contends that the Court is to ignore the explicit statute of limitations set forth in § 546 and apply the state statute of limitations period. Plaintiff cites *In re Bethune*, 18 B.R. 418, 419 (Bankr. N.D. Ala. 1982) and *In re Davis*, 138 B.R. 106, 108 (Bank. M.D. 1992), among other cases, in support of this argument. However, Plaintiff does not distinguish that in all of the cases he cites for this position, the actions were filed within the time frame set forth by § 546, and the statute of limitations question, if at issue in those cases, was whether the proceedings were also timely filed within the applicable state statute of limitations period. The Court does not disagree with Plaintiff that an applicable statute of limitations under state law must also be considered in determining if an action is timely under § 544. However, that analysis does not negate the statute of limitations set forth in § 546(a) for actions being brought under § 544. Although the applicable Alabama statute of limitations provides a more generous six years, to bring an action under § 544, a plaintiff must satisfy both the applicable state law statute of limitations and the limitations set forth in § 546(a).

---

[3] Section 8-9A-9(2) provides in relevant part: "A claim for relief with respect to a fraudulent transfer under this chapter is extinguished unless action is brought: . . . (2) . . . within six years after the transfer of personal property was made." Ala. Code § 8-9A-9(2).

Section 546(a) limits Plaintiff's time to commence this action under § 544 to two years from the date the Order of Relief was entered.[4] It is well recognized that "Section 546(a) of Title 11 provides for a limitations period on actions or proceedings brought pursuant to 11 U.S.C. §§ 544, 545, 547, 553." *In re Mayer*, 235 F. App'x 730, 733 (11th Cir. 2007); *In re Levine*, 134 F.3d 1046, 1053 (11th Cir. 1998) (finding that "this is an adversary action filed pursuant to 11 U.S.C. § 544 . . . . The Bankruptcy Code provides that an adversary action filed under this provision may be filed within two years after the entry of the order for relief. *See* 11 U.S.C. § 546(a)(1)(A)."). Courts addressing this issue conclude that § 546(a), and not state law, provides the controlling statute of limitations when commencing a § 544 action. *In re Palisades at W. Paces Imaging Ctr., LLC*, 2011 WL 4459778, at *4 (Bankr. N.D. Ga. Sept. 13, 2011) ("Courts have held that '[a]s long as the state law statute of limitations has not run before the debtor's filing for bankruptcy, the trustee can bring a fraudulent conveyance action as long as he or she complies with the provisions of § 546(a).'") (citations omitted). *See also In re Naturally Beautiful Nails, Inc.*, 243 B.R. 827, 829 (Bankr. M.D. Fla. 1999); *In re Gerardo Leasing, Inc.,* 173 B.R. 379, 386 (Bankr. N.D. Ill. 1994) (Trustee's claim under state's Uniform Fraudulent Transfer Act was subject to the two-year statute of limitations of § 546 and not the longer, four-year statute of limitations under state law). The shorter timeline set forth in § 546 is a mark of exclusivity provided by the Bankruptcy Code. Specifically, the two-year limitation is

---

[4] Here, Plaintiff was appointed as Trustee the day after the Order for Relief was entered in the underlying bankruptcy case. Accordingly, two years from the entry of the Order for Relief is "the later of" the two potential dates.

exclusive to a trustee in § 544 actions. Once that time expires, a creditor may then pursue a similar fraudulent transfer action in state court. *Johnson v. Allied Recycling, Inc.*, 323 Ga. App. 427, 431, 746 S.E. 2d 728, 731–32 (2013) ("The trustee possesses the right to assert these 'avoidance' claims for only a limited time . . . . [O]nce this statute of limitation expires, '[a] creditor regains standing to pursue a state law fraudulent conveyance action, in its own name and for its own benefit.'") (citations omitted). *See also In re Integrated Agri,* 313 B.R. 419, 427–428 (Bankr. C.D. Ill., 2004); *In re Tessmer,* 329 B.R. 776, 779 (Bankr. M.D. Ga., 2005). Accordingly, the Court is not persuaded by Plaintiff's argument that Alabama's six-year statute of limitations should apply in this proceeding.

Plaintiff also raises issues of equity to suggest that the two-year limitation was or should be extended. Specifically, Plaintiff argues that even if § 546 is the governing statute of limitations period for the fraudulent transfer claims asserted in the Complaint, those claims were timely because the entry of the Consent Order was an implicit extension of the limitations period. (AP Doc. 26). The statute of limitations period set forth in § 546 is subject to equitable considerations including waiver, equitable tolling, and equitable estoppel. *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 699 (11th Cir. 2005) ("[Section] 546 is indeed a statute of limitations, subject to waiver, equitable tolling, and equitable estoppel."). The Court will address each of these separately.

**(1) Equitable Tolling**

A court has discretion to consider equitable tolling. *Young v. United States*, 535 U.S. 43, 49-50, 122 S. Ct. 1036, 1040-41, 152 L. Ed. 2d 79 (2002) ("It is hornbook law that

limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute . . . . That is doubly true when it is enacting limitations periods to be applied by bankruptcy courts, which are courts of equity and appl[y] the principles and rules of equity jurisprudence.") (citations omitted). However, circumstances where such a finding is appropriate are limited. The injured party must show that fraud or extraordinary circumstances prevented the expiration of a limitations period when due diligence was practiced. *In re Int'l Admin. Servs., Inc.,* 408 F.3d at 700 ("Where, despite the exercise of due diligence, a trustee fails to timely bring an avoidance action due to fraud or extraordinary circumstances beyond the trustee's control, equitable tolling prevents the expiration of § 546(a)'s limitations period."); s*ee also In re Pope Logging, Inc.*, 2015 WL 5475777 (Bankr. S.D. Ga. Sept. 17, 2015). Although not in the context of bankruptcy, the Eleventh Circuit has held that the party seeking equitable tolling has the burden of establishing: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Anderson v. Atty. Gen. of Fla.*, 135 F. App'x 244, 246 (11th Cir. 2005) (citations omitted). Here, Plaintiff fails to meet that burden.

Plaintiff argues that the involvement of Debtor and Leanne Todd in the negotiations surrounding the Consent Order and participation in the auction support an equitable tolling of the statute of limitations. However, Plaintiff does not allege any acts of fraud or extraordinary circumstances that prohibited him from filing the Complaint within the two-year statute of limitations. In fact, Plaintiff acknowledges that it was Debtor's amendment to his bankruptcy disclosures on August 15, 2014 that made him aware of the alleged fraudulent transfer. Notably, Plaintiff's response states that Debtor "disclosed the transfer"

in that amendment. (AP Doc. 26). While the statute of limitations could arguably have been tolled until August 15, 2016 (two years after the amendment was filed in the bankruptcy case), Plaintiff has not set forth sufficient grounds to support tolling for an additional two years until December of 2018, when the instant adversary proceeding was filed. *In re Int'l Admin. Servs., Inc.,* 408 F.3d at 701. Although argument is made as to the lengthy negotiations between the parties surrounding the Consent Order and the auction procedures, Plaintiff fails to convince the Court that those events (which occurred over the span of a few months in 2018) are sufficient to toll a statute of limitations period that expired in 2016.[5] Tolling essentially operates as a pause button. *See Artis v. D.C.,* 138 S. Ct. 594, 601, 199 L. Ed. 2d 473 (2018) ("Ordinarily, 'tolled,' in the context of a time prescription . . . means that the limitations period is suspended (stops running) while the claim is *sub judice* elsewhere, then starts running again when the tolling period ends, picking up where it left off."). Accordingly, even if the Court were to entertain equitable tolling here, the time would not have been tolled long enough to save this case from the two-year time bar set forth by § 546. Plaintiff essentially argues for the reinitiation of the statute of limitations, and there is no precedent for such.

**(2) Waiver**

Plaintiff argues that Defendants waived the statute of limitations defense during negotiations for the sale in the underlying bankruptcy case (hereinafter "Consent

---

[5] These arguments are more relevant to "waiver" which was also raised by Plaintiff and will be addressed subsequently.

Negotiations"). Specifically, Plaintiff contends that Defendants' "knowing and active participation in structuring the private auction for the Chapter 5 claims and bidding on [the] same constitute a waiver of the limitations period and/or a waiver of an affirmative defense based on the limitations period." (AP Doc. 26). To establish a waiver of the limitations period, Plaintiff must show that: (1) there existed a right, privilege, advantage, or benefit capable of being waived; (2) there was actual or constructive knowledge of the right, privilege, advantage, or benefit; and (3) there was the intent to relinquish that right or privilege. *In re Hiett*, 519 B.R. 341, 346 (Bankr. M.D. Ala. 2014). All three elements are required to establish waiver, and Plaintiff has not satisfied this burden. *Id.*

As an initial matter, Debtor, through counsel, was the only defendant that signed the Consent Order. (BK Doc. 98). While Defendant, Leanne Todd, was arguably privy to the sale negotiations as a potential purchaser of the assets, Plaintiff fails to establish how an alleged waiver by Debtor and Leanne Todd would transfer or constitute waiver by the remaining Defendants in this action.

Next, it is unclear that there existed a right, privilege, advantage, or benefit capable of being waived at the time the parties engaged in the Consent Negotiations. Plaintiff cites the Consent Order which provides:

> If RREF is the successful bidder, proceeds paid for the claims shall be paid to the Estate and the rights of the Trustee shall be assigned to RREF for all Chapter 5 claims in toto, and RREF shall stand in the shoes of the Trustee, and if necessary, file such action in the name of the Trustee for its own recovery.

(AP Doc. 26 and BK Doc. 98). Although a potential future action was alluded to in the Consent Order, there was no pending action regarding the Chapter 5 claims until this

adversary proceeding was filed. Thus, there was no opportunity for Defendants to raise the statute of limitations defense absent a separate action filed in the future.  The Court is not aware of a defendant's obligation to assert any affirmative defenses prior to an action being filed.  Here, Defendants raised the statute of limitations defense at their first opportunity by pleading it in their response to the Complaint.[6]

Plaintiff also argues that Defendants' "knowing and active participation" during the Consent Negotiations functions as waiver.  While this allegation would support the second element required for waiver (that there was actual or constructive knowledge of the right, privilege, advantage or benefit), the record in this case does not support that position. Based on Plaintiff's own statements at the hearing on April 29, 2019, it appears that all parties involved in the Consent Negotiations were misguided as to the applicable statute of limitations.  At the hearing on April 29, 2019, Plaintiff stated in open court that:

> [W]hen this AP was filed, I believed, and have always believed, and the debtor's attorney in Dothan believed and every trustee I know believed that if a trustee is using the derivative avoidance powers under state law, then the trustee gets the benefit of all of it, including the statute of limitations, that it just seems to me to be counterintuitive to say that the trustee gets to do whatever an unsecured creditor can do in state court except for this one thing. You can't use the statute of limitations. And I may be wrong about that. It may be -- I may be wrong, but that's always been my understanding. It was my understanding when I filed this and just have always operated under that assumption, that we did have the time. And the reason it was filed was just to keep the bidding process going, and it did. And I think everybody at the time, in Dothan, believed that the six-year statute applied under state law.

---

[6] The limitations period may be waived if it is not pleaded as an affirmative defense. 5 Collier on Bankruptcy P 549.07 (15th ed. rev. 2007); *Pugh v. Brook (In re Pugh)*, 158 F.3d 530, 536 (11th Cir. 1998).

(AP Doc. 32). Accordingly, Plaintiff's own statements contradict his argument here. While arguing on the one hand that there was waiver (which requires actual or constructive knowledge of the statute of limitations and the intent of the parties to relinquish that defense), Plaintiff at the hearing informed the Court that that he and the other parties involved in the Consent Negotiations believed that the six-year statute applied under state law. Plaintiff's statements to the Court do not support his position that the Defendants intended to waive their statute of limitations defense. In contrast, it demonstrates a lack of intent by Defendants to waive a defense they were not aware existed at the time of the Consent Negotiations. As such, Plaintiff fails to meet his burden to show that there was a waiver of the statute of limitations defense in this case.

### (3) Equitable Estoppel

While equitable estoppel was not sufficiently pleaded by Plaintiff, the Court will address it briefly. Estoppel is an equitable doctrine which prevents a party from raising a claim or taking a legal position when his prior conduct with regards to that claim is contrary to his position. Estoppel requires a showing of: "(1) words, acts, conduct, or acquiescence causing another to believe in the existence of a certain state of things; (2) willfulness or negligence with regard to the acts, conduct, or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated." *Matter of Garfinkle*, 672 F.2d 1340, 1347 (11th Cir. 1982). As noted above, Plaintiff's own statement before this Court was that he had always believed that the trustee in bankruptcy gets the benefit of the state statute of limitations if the trustee is using the avoidance powers under state law. Thus, it

was not the words, acts, conduct, or acquiescence of Defendants that caused Plaintiff to incorrectly believe the claims were not time barred. Moreover, these same statements indicate that Plaintiff was not relying on any acts, conduct, or acquiescence of the Defendants since he was operating under his own assumption that the six-year statute of limitations applied under state law. As such, Plaintiff has not established that equitable estoppel is applicable in this case.

**COUNT II: Civil Conspiracy**

In Count II of the Complaint, Plaintiff asserts a claim for civil conspiracy contending that Defendants conspired among themselves and/or others to commit the alleged fraudulent transfer. (AP Doc. 1). Defendants argue that the civil conspiracy claim should likewise be dismissed with prejudice because it cannot stand alone as a separate cause of action since the underlying fraudulent transfer action is time barred, and alternatively, the civil conspiracy claim itself is time barred. (AP Doc. 17). The Court agrees.

A civil conspiracy claim under Alabama law is not a stand-alone cause of action. *Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1311 (11th Cir. 2000), *certified question answered,* 872 So. 2d 101 (Ala. 2003) ("'[A] conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy but the underlying wrong that was allegedly committed. If the underlying cause of action is not viable, the conspiracy claim must also fail.'") (quoting *Allied Supply Co., Inc. v. Brown,* 585 So.2d 33, 36 (Ala.1991)); *see also Phillips v. Gen. Elec. Co.*, 881 F. Supp. 1553, 1558 (M.D. Ala. 1995).

Based on the aforementioned analysis, the civil conspiracy claim cannot proceed because the underlying action, or the § 544 fraudulent transfer, is not viable as it is time barred. The two claims are not severable. *See In re Tessemer*, 329 B.R. at 779-80.

Moreover, pursuant to § 6-2-38 of the *Code of Alabama*, "a claim for civil conspiracy must be brought within two years of its accrual." *Eaton v. Unum Grp.*, No. 7:15-CV-01204-LSC, 2015 WL 5306185, at *4 (N.D. Ala. Sept. 10, 2015); Ala. Code § 6-2-38; *Boyce v. Cassese*, 941 So. 2d 932, 944 (Ala. 2006). Here, Plaintiff argues that the "conspiracy" occurred in hand with the alleged fraudulent transfer. Again, Plaintiff admits that Defendants disclosed the transfer in 2014 and that Defendants "conspired among themselves and/or other to commit the wrongful acts" through that transfer. (AP Doc. 1). Accordingly, the conspiracy claim accrued at the time of the transfer. Because that accrual occurred more than two years prior to the filing of this Adversary Proceeding, like Count I, Count II is also time barred.

Plaintiff contends that Defendants' statute of limitations defense here is "inherently inconsistent with Defendants' argument that the Alabama state statute of limitation[s] for fraudulent transfers does not govern those fraud claims." (AP Doc. 26). Again, Plaintiff's interpretation of the applicable statute of limitations is incorrect. The civil conspiracy claim is barred, primarily because it cannot stand alone due to Plaintiff's failure to bring a § 544 action within the time parameters of § 546. Furthermore, the claim is time barred by its own state statute of limitations. *See Boyce*, 941 So. 2d at 944 ("Because the conspiracy to defraud claim is dependent upon the underlying fraud, the statute of limitations on that claim began to run at the same time as did the statute for the underlying fraud claim.")

Case 18-01167    Doc 35    Filed 07/15/19    Entered 07/15/19 14:15:28    Desc Main
Document      Page 14 of 15

(citations omitted). Plaintiff makes no argument as to how the civil conspiracy claim fits into either of the two-year statutes of limitations, whether § 546 or § 6-2-38, Ala. Code, 1975. Instead, Plaintiff argues that "[t]he civil conspiracy claim is timely for all of the same reasons that the fraudulent transfer claims are timely." (Doc. 26). However, because the Court determined that the fraudulent transfer claims were untimely above, Plaintiff's argument fails.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is due to be GRANTED. A separate Order will enter accordingly.

Bess M. Parrish Creswell
United States Bankruptcy Judge

c: Debtor
    Trustee/Plaintiff
    Attorney for RREF
    Attorney for Defendants